# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

|  |  |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| SUSAN SCUBLA, ) | Case No. 19-40426-EDK |
| f/k/a SUSAN HENTSCHEL, ) | |
| Debtor ) | |
| ) | |
| ) | Adversary Proceeding |
| SUSAN SCUBLA, ) | No. 19-4036 |
| f/k/a SUSAN HENTSCHEL, ) | |
| Plaintiff ) | |
| v. ) | |
| TOWN OF EAST HAMPTON, NEW ) | |
| YORK, NEW REZ, LLC d/b/a ) | |
| SHELLPOINT MORTGAGE ) | |
| SERVICING, PUTNAM COUNTY ) | |
| SAVINGS BANK, PCSB BANK, ) | |
| CASOLA WELL DRILLERS, INC., and ) | |
| ROBERT HENTSCHEL, ) | |
| Defendants ) | |

## AMENDED MEMORANDUM OF DECISION

Prior to 2018, Susan Scubla (f/k/a Susan Hentschel), the plaintiff in this adversary proceeding and debtor in the underlying Chapter 11 bankruptcy case (the "Debtor"), jointly owned property located at 19 Broadwood Court, Wainscott, New York (the "Property") with her then-spouse Robert Hentschel ("Robert"). On November 13, 2003, the Debtor and Robert granted a mortgage on the Property (the "2003 Mortgage") in favor of Washington Mutual

1

Bank, FA ("Washington Mutual"). The 2003 Mortgage secured repayment of a $675,500 promissory note (the "2003 Note") signed only by Robert. The 2003 Mortgage was duly recorded in Suffolk County, New York on November 25, 2003.

On May 6, 2008, Robert, but not the Debtor, executed a promissory note in favor of Washington Mutual in the amount of $417,000 (the "Consolidated Note"). On the same date, both the Debtor and Robert executed an "Extension, and Modification agreement" [sic] (the "Modification Agreement") and a mortgage in favor of Washington Mutual to secure repayment of the Consolidated Note (the "Consolidated Mortgage"). Each of the three documents were intended to modify the terms of the 2003 Note and Mortgage.[1] With regard to the 2003 Note and Mortgage, the Modification Agreement provides:

> . . .
>
> III.   AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE
>
> Lender and I agree that the terms of the Notes are changed and restated to the terms of the "Consolidated Note" . . . . The Consolidated Note contains the terms of payment for the amounts that I owe to the Note Holder. **The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.**
>
> IV. AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE
>
> Lender and I agree that terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" . . . . The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property. I agree to be bound by the terms set forth in the Consolidated Mortgage which will **supersede all terms, covenants, and provisions of the Mortgages.**

(emphasis supplied).

---

[1] The Modification Agreement defines "Notes" and "Mortgages" as those listed in Exhibit A to the Agreement, which exhibit describes the 2003 Note and Mortgage.

Following the execution of the Modification Agreement, two documents titled "Satisfaction of Mortgage" were recorded related to the Property. The first, dated May 23, 2008 and recorded on June 17, 2008 by Washington Mutual (the "First Satisfaction"), provided, in relevant part:

> KNOW ALL MEN BY THESE PRESENTS that WASHINGTON MUTUAL BANK, FA . . . , holder of a certain mortgage evidencing an indebtedness in the amount of $675,500.00 plus interest, whose parties, dates and recording information are below, does hereby acknowledge that it has received full payment and satisfaction of the same, and in consideration thereof, does herby satisfy and discharge said mortgage.

The First Satisfaction then sets forth the names, dates, and recording information for the 2003 Mortgage. The second document, dated May 26, 2016 and recorded on July 8, 2016 by JPMorgan Chase Bank, N.A. ("JP Morgan"), successor in interest to Washington Mutual (the "Second Satisfaction"), provided:

> KNOW ALL MEN BY THESE PRESENTS, that JPMORGAN CHASE BANK . . . does hereby certify that a certain indenture of mortgage, bearing date [sic] of November 13, 2003, made and executed by ROBERT J. HENTSCHEL AND SUSAN HENTSCHEL to WASHINGTON MUTUAL BANK . . . to secure payment of the principal sum of $675,500 . . . and duly recorded on November 25, 2003 . . . is PAID, and does hereby consent that the same be discharged of record.
>
> . . .
>
> **List of Additional Mortgages, Consolidation Extension Modifications and Assignments.**
>
> EXTENSION AND MODIFICATION AGREEMENT FROM ROBERT J. HENTSCHEL AND SUSAN HENTSCHEL TO WASHINGTON MUTUAL BANK, FA DATED MAY 6, 2008, RECORDED MAY 23, 2008 . . . .

(emphasis supplied)

In 2018, Robert transferred his interest in the Property to the Debtor. Following the commencement of the Debtor's bankruptcy case under Chapter 11 of the United States

3

Bankruptcy Code[2] on March 20, 2019, the Property was sold pursuant to 11 U.S.C. § 363, with existing liens attaching to the proceeds of the sale. The Debtor then filed the present adversary proceeding against multiple parties to determine the extent, priority, and validity of their secured claims against the Property.

The Debtor has filed a motion seeking summary judgment regarding (1) the Consolidated Mortgage, purportedly held by New Rez, LLC d/b/a Shellpoint Mortgage Servicing ("New Rez") and (2) various liens asserted against the Property by Putnam County Savings Bank ("PCSB") (the "Summary Judgment Motion"). As the Debtor and PCSB have reached an agreement contingent upon the outcome of the Summary Judgment Motion with regard to the Consolidated Mortgage, this Amended Memorandum and the associated Amended Order will address only the issue of whether the Consolidated Mortgage remains a valid and enforceable lien against the Property.

Summary judgment as to a particular claim or defense should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056. Here, the facts material to the Debtor's claim regarding the Consolidated Mortgage are not in dispute. The Debtor advances three legal theories regarding the status of the Consolidated Mortgage. In the complaint, at oral argument, and in her reply brief, the Debtor argued that the specific reference to the Modification Agreement in the Second Satisfaction included the Consolidated Mortgage within the scope of its satisfaction and discharge. Therefore, the Debtor says, the Court should rule, as matter of law, that the Consolidated Mortgage was deemed satisfied and

---

[2] *See* 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code" or the "Code"). All references to statutory sections are to provisions of the Bankruptcy Code unless otherwise stated.

discharged by the Second Satisfaction. The Debtor also asserted in the complaint that no sale proceeds should be distributed on account of the Consolidated Mortgage because only Robert, and not the Debtor, signed the Consolidated Note. Finally, in the Summary Judgment Motion, but not in the complaint, the Debtor alleged that the Consolidated Mortgage is avoidable as an unperfected lien under § 544 and can be preserved for the benefit of the bankruptcy estate pursuant to § 551.

This Court disagrees.

First, the Court notes that the Second Satisfaction does not specifically reference the Consolidated Mortgage, but instead references the Modification Agreement. However, assuming (without deciding) that the reference to the Modification Agreement would include the Consolidated Mortgage (attached to the Modification Agreement as Exhibit D), that reference is not included in the clause which specifically describes the lien that has been paid and should be deemed discharged.

Instead, the reference to the Modification Agreement appears in a section titled "List of Additional Mortgages, Consolidation Extension Modifications and Assignments." A strained reading may lead one to conclude, as the Debtor does, that the documents referenced in that section are additional encumbrances that are to be discharged. However, in addition to mortgages and consolidation agreements, that section also refers to assignments – instruments that merely transfer ownership of other documents and are *not* subject to "discharge." The Court thus reads the reference to the Modification Agreement in the Second Satisfaction as merely setting forth other documents of record that affect the Property, and not purporting to discharge or deem satisfied the terms of the Consolidated Mortgage.

The Debtor's argument regarding her lack of personal liability on the Consolidated Note

5

is equally unavailing. The Debtor presented no legal argument in support of a claim that the mere fact that the Debtor did not sign the Consolidated Note renders the Consolidated Mortgage, which she *did* sign, unenforceable against the Property. And the Court has found none. Instead, under New York law "it is not necessary that an obligation involve personal liability in order for a mortgage to remain valid . . . ." *Deutsche Bank Tr. Co. Americas v. Vitellas*, 131 A.D.3d 52, 62, 13 N.Y.S.3d 163, 172 (2015) (holding that discharge of personal liability in bankruptcy proceeding does not affect enforceability of mortgage against property). The Debtor has failed to set forth any persuasive argument that could lead this Court to conclude that the lack of the Debtor's personal liability on the Consolidated Note, without more, affects the validity or enforceability of the Consolidated Mortgage.

Finally, even assuming the Debtor's references to §§ 544 and 551 should be entertained despite having been raised for the first time in the Summary Judgment Motion, *see In re GT Advanced Techs., Inc.*, 547 B.R. 3, 13-14 (Bankr. D.N.H. 2016), *aff'd sub nom. Tera Xtal Tech. Corp. v. GT Advanced Techs., Inc.*, No. 16-CV-91-PB, 2017 WL 590340 (D.N.H. Feb. 13, 2017) (noting that legal theories raised for the first time on summary judgment may be rejected; "there must be some explicit development of the claim prior to the summary judgment stage sufficient to put the defending party on notice that the claim is being asserted against them"), the Debtor has failed to articulate how those provisions would allow the estate to avoid and preserve the Consolidated Mortgage. At all other times, the Debtor has argued only that the Consolidated Mortgage no longer encumbers the Property because it was discharged under the plain language of the Second Satisfaction. The Debtor has not explained how the discharge of liability on a mortgage would convert the mortgage into a unperfected lien. Furthermore, in light of the Court's ruling that the plain language of the Second Satisfaction did not affect the validity of

the Consolidated Mortgage, any argument under § 544, undeveloped as it is, also fails.

Accordingly, the Debtor's request for summary judgment with regard to the Consolidated Mortgage will be DENIED in part (reserving the PCSB claims for later determination) and summary judgment will be granted *sua sponte* in favor of New Rez.[3] An order and partial judgment in conformity with this Amended Memorandum of Decision will issue forthwith.

DATED: October 20, 2020                    By the Court,

_____
Elizabeth D. Katz
United States Bankruptcy Judge

---

[3] Before granting summary judgment sua sponte, "two conditions precedent must be satisfied: (1) the case must be sufficiently advanced in terms of pretrial discovery for the summary judgment target to know what evidence likely can be mustered, and (2) the target must have received appropriate notice." *Ostrander v. Andre (In re Motta)*, 423 B.R. 393, 405 (Bankr. D. Mass.), aff'd, 434 B.R. 193 (B.A.P. 1st Cir. 2010) (quoting *Rogan v. Menino*, 175 F.3d 75, 79 (1st Cir. 1999)). Sua sponte summary judgment is appropriate in this case as the parties agree that the Court has all the material facts before it. And, most importantly, at a hearing on the Summary Judgment Motion held on October 16, 2020, with knowledge of the Court's ruling on the validity of the Consolidated Mortgage, plaintiff's counsel requested the entry of partial judgment in favor of New Rez to speed resolution of the adversary proceeding.